IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KEVIN B.,[1] § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § Civil Action No. 4:23-cv-1044-BU | |
| MARTIN O'MALLEY,[2] § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |
| § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

For the reasons explained below, the undersigned recommends that the decision of the Commissioner of Social Security (the Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) be reversed and this case remanded to the Commissioner for further proceedings.

### I. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff sues under 42 U.S.C. § 405(g). Venue is proper in the Northern District of Texas, Fort

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

[2] Although Kilolo Kijakazi was the Acting Commissioner at the time this action was filed, the current Commissioner, Martin O'Malley, is "automatically substituted as a party" by operation of law. Fed. R. Civ. P. 25(d); *see also* 45 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

Worth Division, because Plaintiff resides in Tarrant County, Texas. Dkt. No. 1 at 1; 42 U.S.C. § 405(g).

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Kevin B. seeks judicial review of a final adverse decision of the Commissioner under 42 U.S.C. § 405(g). Dkt. No. 1. On January 18, 2020, Plaintiff filed applications for DIB, alleging a disability onset date of November 13, 2018. Tr. 325. His application was denied initially and on reconsideration. Tr. 150-53, 157-61. He requested a hearing. Tr. 162-63. A hearing was held on June 21, 2021. Tr. 43, 193. On August 2, 2021, the Administrative Law Judge (ALJ) issued a decision denying benefits. Tr. 119-33. Plaintiff sought administrative review. Tr. 229-230. On January 21, 2022, the Appeals Council granted review and remanded the case to the ALJ. Tr. 139-42.

On February 6, 2023, the ALJ held a remand hearing. Tr. 73, 275. At his remand hearing Plaintiff requested a closed period from November 13, 2018, through March 22, 2022. Tr. 76-77. On March 1, 2023, the ALJ issued another decision denying benefits. Tr. 7-22. Plaintiff again sought administrative review. Tr. 313-14. The Appeals Council denied review. Tr. 1-5. Thus, the ALJ's decision is the final decision of the Commissioner. Tr. 1.

The ALJ found that Plaintiff had severe impairments of depression, anxiety, and bipolar, Tr. 13. To determine Plaintiff's mental RFC, the ALJ considered Plaintiff's mental health records, his hearing testimony, the mental health expert opinions, and the prior administrative findings. Tr. 18–19.

Pertaining to the mental health experts, the ALJ found the prior administrative findings of "severe mental health impairments of depressive, bipolar, and related disorders"

non-persuasive because they lacked support due to "the evidence [being] insufficient to complete a functional assessment at the time of their review of records." Tr. 19.

The ALJ also considered the opinion of Lawrin Dean, LPC, who opined that Plaintiff "could understand, remember, and carry out simple instructions, concentrate, persist, and maintain pace for less than two-hour periods at a time, but [has] marked limitations in interacting and relating to others and moderate limitations in adapting and managing" himself. Tr. 19. But the ALJ found Dean's opinions non-persuasive because they were "internally inconsistent" with Dean's own clinical notes and also inconsistent with, and hence unsupported by, other mental status findings in the record. Tr. 20.

After finding the prior administrative findings and Dean's opinions non-persuasive, the only remaining mental health opinion was that of Dr. James Jenson, Psy.D. Tr. 19 (citing Tr. 866–72). The ALJ acknowledged support in Jenson's records for his opinion that Plaintiff "could be a threat to himself or others and was unable to manage benefits." Tr. 19. The ALJ also acknowledged support in Jenson's records for his opinion that Plaintiff "underreported his mental health symptoms during the examination in a misguided notion that this would aid him in his disability application." Tr. 19. This support, the ALJ concluded, was found in Jenson's recording of Plaintiff's text messages which compelled Jenson to notify the authorities.[3] Tr. 19.

The ALJ relied on Plaintiff's testimony in finding Jenson's opinion that Plaintiff was unable to manage benefits was "inconsistent with [Plaintiff's] hearing testimony that he

---

[3] Plaintiff's texts to Jenson were, "doc I can kill people but I can't do anymore" and "I know what it is to have a man's guts in my hands." Tr. 870–71.

managed his own money when he was working and feels like he could continue to do so." Tr. 19. Finally, the ALJ found that Jenson's opinion that Plaintiff was a threat to himself or others "is inconsistent with the remainder of the evidence, which does not reflect similar opinions." Tr. 19.

After finding the mental health expert opinions unpersuasive, the ALJ concluded that while "the record shows that the claimant has some limitations . . . the claimant's conservative nature of treatment, self-reported activities of daily living, including ability to find and maintain various forms of work activity, mental status findings showing gradual improvement with treatment, support a finding that he" retained the retained the mental RFC to:

> understand, remember, carry out detailed but not complex instructions, and use judgment to make all work related decisions. The claimant can have/maintain frequent contact and interaction with supervisors, coworkers, and the public. The claimant is able to respond appropriately to frequent changes in the workplace.

Tr. 15–16, 20.

### III. LEGAL STANDARDS

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

Although a claimant bears the burden of establishing whether they meet the requirements for a disability, an ALJ's finding that a claimant has not satisfied their burden must be based on substantial evidence. *See, e.g.*, *Belk v. Colvin*, 648 F. App'x 452 (5th Cir. 2016) (per curiam). And judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the

claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies their initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

## IV. DISCUSSION

### A. The ALJ's Mental RFC is Not Supported by Substantial Evidence.

Plaintiff argues the ALJ's mental RFC is not supported by substantial evidence because she formulated the RFC without the assistance of a medical opinion in violation of *Ripley*. Dkt. No. 12 at 13, 19–22. The Court agrees. This error alone compels remand.

"Under the regulations and our case law, the determination of [the RFC] is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam) (citing *Ripley*, *v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also* 20 C.F.R. §

6

404.1546(c). In making that determination, the ALJ must consider "all the relevant medical and other evidence in the record." *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (citing 20 C.F.R. § 404.1545(a)(1)). So, while the RFC determination is solely the responsibility of the ALJ, this Court must still decide whether that determination was supported by substantial evidence. *Ripley*, 67 F.3d at 557.

"The interpretation of medical evidence in arriving at an RFC is [also] the responsibility of the ALJ." *Taylor,* 706 F.3d at 603 (citing *Ripley*, 67 F.3d at 557). But as a non-medical professional, "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing." *Ripley,* 67 F.3d at 557. "The absence of such a statement, however, does not, in itself, make the record incomplete" and "where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id*.

When the record contains medical evidence establishing the *existence* of an impairment, but not *how* the impairment impacts the ability to work, a gap exists which cannot be bridged by the ALJ inferring from the medical records how the condition impacts the ability to work, at least not without the aid of a medical professional. *Ripley*, 67 F.3d at 557. When the ALJ does this, it deprives the RFC of substantial evidence. *Ripley*. There must be evidence clearly establishing the actual effect of the claimant's conditions on the ability to perform work.

Here, the ALJ rejected all but one mental health opinion in whole, that of Jenson. But the ALJ rejects much of this opinion as well. Tr. 19. *See also Donna A.*, 2023 WL

5004867 at *14 (after rejecting an opinion as "unpersuasive" an ALJ's decision "rests only" on the remaining evidence). To the extent the ALJ relies on Jenson's report, her findings often directly contradict Jenson's professional interpretation of his clinical findings. For example, Jenson notes that Plaintiff "reported that [his] medications . . . were helpful in managing his symptoms. Tr. 17." The ALJ relies on this part of Jenson's report to rebut Plaintiff's claim, made during the same examination, that his "symptoms made it difficult for him to function." Tr. 17.

But Jenson did not make a finding that Plaintiff's medications were indeed helping his symptoms. He merely recorded in his clinical notes what Plaintiff reported. One of Jenson's professional opinions, which the ALJ rejected, was that *Plaintiff's self-reporting was intentionally misleading about the "severity of his psychiatric symptoms*." Tr. 871; Tr. 18. (emphasis added). By seizing on Plaintiff's self-reports about the efficacy of his mental health medications, particularly considering this history and the complexity of mental health conditions, the ALJ effectively substituted her opinion about the import of Plaintiff's self-reporting for that of Jenson.

Also, the ALJ found that Jenson's opinion that Plaintiff "was a threat to himself or others is [] inconsistent with the remainder of the evidence," because the remaining evidence did "not reflect similar opinions." Tr. 19. Pointing out this inconsistency is well and good, *if* the ALJ intends to rely on other opinions. But again, the ALJ rejected all other mental health opinions in the record. Here, unsatisfied with the experts' opinions about how Plaintiff's mental health conditions might affect his ability to work, the ALJ simply

infers from her own review of the medical evidence what Plaintiff is mentally capable of doing.

In crafting Plaintiff's mental RFC, the ALJ did not rely on any of the available mental health opinions. Rather, she relied on her own interpretation of the records and concluded that Plaintiff had "some limitations" based on his "record of treatment, psychotropic medication management, and the claimant's hearing testimony." Tr. 20. Nor did the ALJ seek a different mental health professional's assessment of how these limitations affect Plaintiff's ability to perform work. Instead, she inferred that he retained the mental RFC above from

> the claimant's conservative nature of treatment, self-reported activities of daily living, including ability to find and maintain various forms of work activity, [and] mental status findings showing gradual improvement with treatment.

This is nothing more than her unaided interpretation of the mental health records and constitutes error under *Ripley*.

### B. The Error Is Not Harmless

Finally, this error resulted in the ALJ failing to consider a vocationally relevant limitation that directly speaks to whether Plaintiff "can have [and] maintain frequent contact and interaction with supervisors, coworkers, and the public." Tr. 16. The failure to consider vocationally relevant limitations necessarily impacts the analysis at step 5, and thus is not harmless. *See Conte v. Comm'r, SSA*, No. 4:16-CV-00048-CAN, 2017 WL 1037570, at *7 (E.D. Tex. Mar. 16, 2017) (finding harmful error when the error effects the decision at step-

five). Because the mistake is harmful error, the undersigned recommends remand. *See Keel v. Saul*, 986 F.3d 551 (5th Cir. 2021).

## V. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VI. CONCLUSION

For the reasons stated above, the undersigned recommends that the decision of the Commissioner denying Plaintiff's application for SSI benefits be reversed and this case remanded to the Commissioner for further proceedings.

## VII. REASSIGNMENT OF CASE

Also, it appears that one party has not consented to proceed before a magistrate judge. Thus, the Clerk is directed to reassign this case to a district judge under the case

assignment order for the relevant division. *See* Special Order No. 3–350. The undersigned will automatically remain as the referral judge. *Id*.

    ORDERED this 12th day of November 2024.

 

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE